UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AIDIN EHSANIBENAFATI, et al.,
Plaintiffs,
v.
MARCO RUBIO, et al.,
Defendants.

Case No. 25-cv-04054-NC

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: ECF 8, 13, 20, 23

In this case, Plaintiffs allege unreasonable delay by Defendants in the adjudication of two of the Plaintiffs' family-based IR-5 visa applications.

Before the Court are the parties' cross-motions for summary judgment. In their motions, the parties dispute whether Defendants had a mandatory duty, whether the doctrine of consular nonreviewability applies, and whether a nearly nine-month delay by Defendants is unreasonable. For the reasons below, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Aidin Ehsanibenafati, a U.S. citizen, is the son of Plaintiffs Aliakbar Ehsanibenafati and Delta Aliani. ECF 1 (Compl.) ¶ 44. Aliakbar Ehsanibenafati and Delta Aliani (the Parents) applied for a family-based IR-5 Visa for the U.S. *Id.*

United States District Court
Northern District of California

Aidin Ehsanibenafati filed separate Form I-130 petitions for the Parents, which were approved by the United States Citizenship and Immigration Services (USCIS) and forwarded to the National Visa Center (NVC) for further processing. *Id.* ¶¶ 45–46. The Parents then filed Form DS-260s, which are the Immigrant Visa Electronic Applications. *Id.* ¶ 47. The NVC subsequently deemed them as "documentarily qualified" on June 14, 2023, and scheduled their immigrant visa interview for January 23, 2025, at the U.S. Embassy in Yerevan, Armenia. *Id.*; ECF 13 at 5.

The Parents attended their immigrant visa interview on their scheduled January 23, 2025, date in Yerevan. Compl. ¶ 48. At the conclusion of their interview, the consular officer refused the Parents' visa applications pursuant to 8 U.S.C. § 221(g) because they failed to demonstrate their eligibility for the visas and additional screening was necessary. ECF 13 at 5 (citing ECF 13-1 (Tate Decl.) ¶ 4). The consular officer informed the Parents that their cases would be placed in administrative processing after they completed and submitted Form DS-5535, which are Supplemental Questions for Visa Applicants. Compl. ¶ 49; ECF 13 at 5 (citing Tate Decl. ¶ 5). On January 29, 2025, the Embassy sent an email to the Parents stating that it was in receipt of their completed Form DS-5535s and that their administrative processing had started. Compl. ¶ 50; ECF 13 at 5 (citing Tate Decl. ¶ 6).

The Parents' visa applications have remained in administrative processing since January 23, 2025. *Id.* ¶ 51. To date, the State Department Consular Electronic Application Center (CEAC) website shows the Parents' application statuses as "Refused," and states that for those who were "refused for administrative processing, [their] case will remain refused while undergoing such processing" and they "will receive another adjudication once such processing is complete." *Id.* ¶ 58. Aidin Ehsanibenafati submitted multiple inquiries about his Parents' visa applications to the consulate and congressional offices. *Id.* ¶ 59. He alleges that he has not received "insight" into the status of the application from them or the U.S. Embassy beyond confirmation that the applications were refused under § 221(g) with security screening pending. *Id.* ¶¶ 51, 59; ECF 25 at 1.

The "continued separation" between Aidin Ehsanibenafati and his parents has "placed a heavy emotional toll on the entire family." Compl. ¶ 56. For example, Aidin Ehsanibenafati "suffers from persistent anxiety and sleep disturbances out of fear that his parents may never be allowed to immigrate or attend his wedding or spend their remaining years with him in the United States." *Id.*

### B. Procedural Background

Plaintiffs Aidin Ehsanibenafati, Aliakbar Ehsanibenafati, and Delta Aliani brought this action against Defendants Marco Rubio in his official capacity as the Secretary of State and Robert Jachim in his official capacity as the Acting Director of the Office of Screening, Analysis, and Coordination on May 9, 2025. ECF 1.

Plaintiffs moved for summary judgment on every issue. ECF 8. Defendants opposed Plaintiffs' motion for summary judgment and filed a cross-motion for summary judgment in the same filing. ECF 13. Plaintiffs replied in support of their motion for summary judgment and opposed Defendants' cross-motion for summary judgment. ECF 15. Defendants replied in support of their cross-motion for summary judgment.[1] ECF 18. Plaintiffs filed a supplemental brief providing information relevant to the motions for summary judgment. ECF 25.

All parties consented to magistrate judge jurisdiction. ECF 4; ECF 10; ECF 11.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald

[1] Plaintiffs moved to strike Defendants' reply for filing it late by one day. ECF 20. The Court denied this motion. ECF 27.



United States District Court
Northern District of California

assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 572 U.S. 651 (citing *Liberty Lobby*, 477 U.S. at 255).

## III. DISCUSSION

All parties filed motions for summary judgment. Plaintiffs argue that Defendants failed to fulfill their non-discretionary duty to adjudicate the Parents' visa applications within a reasonable time and thus should be compelled to do so under 28 U.S.C. § 1361 of the Mandamus Act and 5 U.S.C. §§ 555(b), 706(1), and 706(2) of the Administrative Procedures Act (APA). ECF 8 at 3–5. Defendants argue that this argument fails under the Mandamus Act and 5 U.S.C. §§ 555(b) and 706(1) of the APA because (1) the Court lacks jurisdiction to review Plaintiffs' APA and Mandamus Act claims because Defendants fulfilled its duty by issuing an INA § 221(g) refusal and they do not have an additional mandatory, non-discretionary duty, (2) if the Court has jurisdiction, the doctrine of consular nonreviewability applies, and regardless, (3) the alleged delay by Defendants of nearly nine months is reasonable. ECF 13 at 2. Defendants further argue that Plaintiffs did not show the requirements necessary to bring an APA claim under § 706(2).

The Court first finds that regardless of whether Defendants had a duty or the consular nonreviewability doctrine applies, there is no genuine dispute of material fact that there was no unreasonable delay under the Mandamus Act and 5 U.S.C. §§ 555(b) and 706(1) of the APA, and second, finds that there is no genuine dispute of material fact that

Plaintiffs did not allege there was a final agency action under § 706(2) of the APA. Thus, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment.

**A. Plaintiffs' Claims Under 28 U.S.C. § 1361 of the Mandamus Act and 5 U.S.C. §§ 706(1) and 555(b) of the APA Fail Because Defendants' Actions Were Not Unreasonably Delayed.**

Plaintiffs argue that Defendants must be compelled to perform their duty to adjudicate Plaintiffs' immigrant visa application under 5 U.S.C. § 706(1) of the APA and 28 U.S.C. § 1361 of the Mandamus Act because Defendants unreasonably delayed the applications' final adjudication in violation of 5 U.S.C. § 555(b) of the APA. Compl. ¶¶ 20–22, 69, 72; ECF 8 at 5.

Here, because Plaintiffs are seeking the exact same remedy—compelling Defendants to adjudicate the Parents' visa applications—under the Mandamus Act and the APA, the Court will only analyze Plaintiffs' APA claim. Compl. at 24; *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (recognizing that "mandamus relief and relief under the APA are 'in essence' the same," and thus, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [a court] may elect to analyze the APA claim only"). To determine whether Plaintiffs can move forward with its APA and Mandamus Act claims to compel agency action, the Court must determine whether there is a genuine issue of material fact that Defendants (1) had "a clear, certain, and mandatory duty," and (2) had "unreasonably delayed in performing such a duty." *Vaz*, 33 F.4th at 1136.

The Court finds that regardless of whether Defendants had a mandatory duty, Plaintiffs fail to point to evidence that shows there is a genuine dispute of material fact that such a duty was not unreasonably delayed.

United States District Court
Northern District of California

**1. The Court Does Not Need to Determine Whether There Was a Mandatory Duty or Whether the Doctrine of Consular Nonreviewability Applies.**

Although the parties disagree as to whether Defendants bear a mandatory duty to finalize visa applications and whether Defendants' refusal under 221(g) is subject to the doctrine of consular nonreviewability, the Court need not resolve these issues. *See Mosayebian v. Blinken*, No. 24-cv-130 JLS-MMP, 2024 WL 3558378, at *6 (S.D. Cal. July 25, 2024) (assessing the reasonableness of delay without deciding the existence of a mandatory duty). This is because even assuming a mandatory duty exists or the doctrine of consular nonreviewability applies, Plaintiffs fail to show that there is a genuine issue of material fact that there was no unreasonable delay. *Id.*

**2. There Is No Genuine Issue of Material Fact That There Was No Unreasonable Delay.**

Here, both parties agree that the Parents' visa applications have been in administrative processing since the consular officer's 221(g) refusal of the Parents' application on January 23, 2025, after their interview. ECF 13 at 18 and ECF 15 at 6 (both parties stating a delay since January 23, 2025). Thus, there is no genuine issue of material fact that if Defendants had a mandatory duty, the length of delay to date would be nearly nine months. *See Mosayebian*, 2024 WL 3558378, at *7 (finding that court measure the delay beginning on the date of the last concrete step taken by the government—typically, the date of the consulate interview).

To determine whether an agency's delay is unreasonable under the APA, the Court "use[s] the *TRAC* factors—the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ('*TRAC*')." *Vaz*, 33 F.4th at 1137. These factors are:

(1) the time agencies take to make decisions must be governed by a "rule of reason[";]

(2) where Congress has provided a timetable or other indication of the speed

with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (citations omitted). A court should compel action under the *TRAC* factors only when the agency's failure to respond is "so egregious" as to warrant relief. *Id.* at 79. Here, the Court does not find that that the agency's undisputed nearly nine-month delay warrants relief under the *TRAC* factors.

**a. The First *TRAC* Factor Strongly Favors Defendants.**

In the context of an immigration visa application, as is the case here, the first *TRAC* factor "requires court so consider both the length of the delay and the reasons for the delay." *Shahijani v. Laitinen*, No. 23-cv-03967-RGK-MRW, 2023 WL 6889774, at *4 (C.D. Cal. Oct. 6, 2023). When looking at the length of delay, Courts often turn to precedent to determine whether a delay's length renders it plausibly unreasonable. *Mosayebian*, 2024 WL 3558378, at *7.

Here, after looking at past cases, the Court determines that nine months is not an unreasonable delay. Other courts who have faced the same question as this Court has found that a nine-month delay, and even some delays beyond nine months, are not unreasonable. *See, e.g.*, *Soltani v. Blinken*, No. 24-cv-03067-CSK, 2025 WL 1411620, at *6 (E.D. Cal. May 15, 2025) (9-month delay); *Yavari v. Pompeo*, No. 19-cv-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (14-month delay); *Mosayebian*, 2024 WL 3558378, at *7 (11-month delay).



United States District Court
Northern District of California

Further, Plaintiffs do not distinguish their case from others that found that similar timelines were reasonable. They have not alleged any facts or pointed to any evidence as to the reason for the delay beyond stating that it was "misprioritization inconsistent with a rule of reason" to delay a response "despite documented urgency and meet-and-confer efforts." ECF 15 at 6. However, practically speaking, the visa application process takes time because "it involves inter-agency coordination about specialized subject matter expertise," and thus a delay to complete further security screening comports with the "rule of reason." ECF 13 at 20. Plaintiffs do not show that their applications are being treated differently from similar applications or that agency officials have been sitting idle. *See Shahijani*, 2023 WL 6889774, at *4.

Accordingly, the Court finds that the first factor weighs in favor of Defendants.

**b. The Second *TRAC* Factor is Neutral.**

The second *TRAC* factor asks whether Congress has provided "a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80.

While Plaintiffs acknowledge that no explicit timeline exists, they point to Defendants' 120-day benchmark for concluding applications and that 71% of cases like theirs resolve within 60 days. ECF 15 at 6. However, these statistics do not create a binding obligation on Defendants.

Accordingly, the Court finds that the second factor is neutral.

**c. The Third and Fifth *TRAC* Factors Favor Plaintiffs.**

The third and fifth TRAC factors largely overlap and can generally be evaluated together. *See Shahijani*, 2023 WL 6889774, at *4. Both concern the impact of the delay on health and human welfare. *Id.*

Here, Plaintiffs have alleged that because of their prolonged family separation, Aidin Ehsanibenafati has suffered from persistent anxiety and sleep disturbances out of fear that his parents may never be allowed to immigrate or spend their remaining years with him in the United States. ECF 1 ¶ 56. Further, the Parents were unable to attend

Aidin Ehsanibenafati's wedding and are exposed to security risks in Iran. ECF 8 at 4. The Court acknowledges and is sympathetic to the human suffering and uncertainty the Plaintiffs face while waiting for the Parents' administrative processing. Plaintiffs' interest in ending their separation is "undeniably significant." *Mosayebian*, 2024 WL 3558378, at *10. Indeed, courts have found that "prolonged separation from a child or family member may be considered a risk to human health and welfare." *Id.* (citations omitted).

Accordingly, the Court finds that the third and fifth factors weigh in favor of Plaintiffs.

**d. The Fourth *TRAC* Factor Favors Defendants.**

The fourth *TRAC* factor concerns whether compelling Defendants to act would detract from its higher or competing priorities. *Mosayebian*, 2024 WL 3558378, at *10.

Plaintiffs have not shown reasons that would justify expediting the Parents' applications ahead of other applications. While Plaintiffs argue they do not seek to "jump the line" and instead only "request resolution" of their application, compelling them to do so with a relatively short delay and with no stated reason to do so, would amount to a judicial reordering of the agency's priorities. ECF 15 at 7. This is because, unfortunately, consular processing capacity "is presently a zero-sum game," so "granting them relief would necessarily mean additional delays for other applicants—any of whom undoubtedly face hardships of their own." *Lee v. Blinken*, No. 23-cv-1783-DLF, 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024). Indeed, both cases that Plaintiffs cite, *Yavari* and *Didban*, have similar facts to the case at hand and weighed the fourth factor in favor of Defendants for similar reasons. *Yavari*, 2019 WL 6720995, at *8; *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020).

Accordingly, the Court finds that the fourth factor weighs in favor of Defendants.

**e. The Sixth *TRAC* Factor is Neutral.**

The final *TRAC* factor requires the Court to "determine whether the agency has acted in bad faith in delaying the action." *Lee*, 2024 WL 639635, at *7 (citation omitted).

Here, Plaintiffs do not allege any facts or point to any evidence suggesting bad faith. ECF 15 at 7. They only allege that Defendants' writing of incorrect case numbers, mischaracterization of Plaintiff's injuries, and dismissive meet-and-confer responses suggest "carelessness." *Id.* However, being careless is not enough to show that there was bad faith. *See Mosayebian*, 2024 WL 3558378, at *11 (finding that the "mere existence of the delay" and "absence of efforts by Defendants to expedite [the visa] application or provide a substantial update" is not bad faith under the sixth *TRAC* factor).

Accordingly, the Court finds that the sixth factor is neutral.

Taken together and especially considering that the first factor is "the most important," the *TRAC* factors ultimately favor the Defendants. *See Yavari*, 2019 WL 6720995, at *8. Plaintiffs have not shown a genuine dispute of material fact that would show that a delay of roughly nine months, though difficult for Plaintiffs, is not an unreasonable delay as matter of law. Because Plaintiffs failed to establish an undue delay under the APA, their claim for mandamus relief necessarily fails as well. *See Didban*, 435 F. Supp. 3d at 177.

As such, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment as to Plaintiff's claims under 28 U.S.C. § 1361 of the Mandamus Act and 5 U.S.C. §§ 555(b) and 706(1) of the APA.

**B. Plaintiffs' APA, 5 U.S.C. § 706(2), Claim Fails as a Matter of Law Because They Do Not Allege a Final Agency Action.**

Plaintiffs also bring an APA Claim under 5 U.S.C. § 706(2) against Defendants. Compl. ¶ 86. As Plaintiffs correctly state, 5 U.S.C. § 706(2) outlines that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Compl. ¶ 61. However, Plaintiffs do not allege a final agency action that is necessary to bring a § 706(2) claim, and to the contrary, only allege agency inaction. *See, e.g.*, Compl. ¶ 68 (alleging that the "Embassy has failed to render a final decision"); *Lee v. Blinken*, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (finding plaintiffs failed to allege

United States District Court
Northern District of California

a "crucial element under § 706(2)(A)" when they concede that they "have yet to receive a final adjudication of their visa application . . . and rely heavily on the fact there has been on final decision"). Plaintiffs do not dispute that there was no final agency action or set forth facts supporting otherwise, nor do they address Defendants' argument that "Plaintiffs' claim properly arises under § 706(1), not 706(2)." *See, e.g.*, ECF 8 at 3 ("Defendants have failed to issue a final decision. . ."); ECF 15 at 1 (stating that "there has been no final decision on Plaintiffs' application"). The Court therefore finds that there is no genuine dispute of material fact that Plaintiffs did not plausibly allege a claim under § 706(2). *See Daneshvar v. Blinken*, No. 24-cv-00838-FWS-DFM, 2024 WL 5410448, at *3 n.2 (C.D. Cal. Nov. 21, 2024) (dismissing the plaintiffs' § 706(2) claim because they did not allege a final agency action, as opposed to agency inaction, and did not address defendants' argument in their opposition).

As such, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment as to Plaintiffs' claim under § 706(2) of the APA.

**IV. CONCLUSION**

Accordingly, the Court DENIES the entirety of Plaintiffs' motion for summary judgment and GRANTS the entirety of Defendants' cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 16, 2025

NATHANAEL M. COUSINS
United States Magistrate Judge